[No. 8436.    Department Two.    June 10, 1910.]

### SKAGIT COUNTY, *Plaintiff and Appellant*, v. AMERICAN BONDING COMPANY OF BALTIMORE, *Defendant and Appellant*.[1]

COUNTIES — OFFICERS — DUTIES—LIQUOR LICENSES — PAYMENT OF FEES. Rem. & Bal. Code, §6263, requiring liquor licenses to be paid "annually in advance to the county‚treasurer, who shall pay ten per cent of the amount into the state treasury" does not require the licensee to personally pay the county treasurer before issuance of the license is ordered by the county commissioners; but the same is to be paid to the treasurer by the auditor with whom the fee is deposited upon making application, after the application is granted.

COUNTIES—OFFICERS—DUTIES—OFFICIAL BONDS.    Under Rem. & Bal. Code, § 3917, subd. 9, directing the county auditor, as clerk of the board of county commissioners to "perform all other duties required by law or any rule or order of the board," it is a breach of the auditor's official bond to embezzle liquor license fees deposited with him as clerk of the board, after he had been ordered by the board to issue the licenses and pay the fees over to the county treasurer.

SAME.    The embezzlement by the county auditor of fees for recording marriage licenses, paid to him by reason of his official position, although there was no law authorizing him to receive the same, is a breach of his official bond for which his surety is liable; but the recovery must be limited to the fees received during the term of office covered by the bond.

Cross-appeals from a judgment of the superior court for Skagit county, Joiner, J., entered January 11, 1909, upon findings in favor of the plaintiff, in an action on an official bond, after a trial on the merits before the court without a jury.    Modified.

*Augustus Brawley*, for plaintiff.

*F. S. Blattner* and *L. B. da Ponte*, for defendant.

CROW, J.—This action in many respects grows out of the same state of facts involved in cause No. 8182, *Skagit County*

[1]Reported in 109 Pac. 199.

*v. American Bonding Co., ante* p. 1, 109 Pac. 197, in which we have this day affirmed the judgment of the trial court. Fred Blumberg, now deceased, was first elected auditor of Skagit county in 1902, and reelected in 1904, his second term expiring in January, 1907.   This action was commenced against Allen Blumberg, administratrix of his estate, and American Bonding Company, a corporation, as surety, on his official bond given in the penal sum of $10,000, to recover for his embezzlements and defalcations, alleged to have occurred during his second term.   No question of the statute of limitations is here involved.   The items claimed in the complaint and now disputed may be summarized as follows:

| | |
|---|---:|
| Balance due on Fee Book | $140.70 |
| Hunters Licenses | 4.00 |
| Marriage Licenses | 36.00 |
| Fees to be paid to the clerk of the court on filing of marriage returns which should have been turned over to successor. | 52.00 |
| Liquor Licenses | 5,750.00 |
| Warrants on Road Dis. No. 2 | 219.00 |
| Warrants on Road Dis. No. 3 | 1,780.00 |
| Warrants on Current Expense Fund | 722.10 |

The cause was tried without a jury, findings of fact, to which no exceptions have been taken by either party, were made and entered, and final judgment was entered in  favor of the plaintiff for $2,855.93, which includes most of the items above set forth, but excludes the liquor license fees. The plaintiff and the bonding company have both appealed.

As there are two appeals, we will refer to the parties as plaintiff and defendant, and will first consider the appeal prosecuted by the county.   The county contends that the trial court erred in refusing any recovery against the defendant bonding company on account of the liquor license fees.   The finding on these items was as follows:

"That during the said term of office of the said Fred Blumberg there was paid to the said Blumberg, or to the board of county commissioners of said county, in checks, drafts and money accompanying applications for liquor li-

censes the sum of $6,200. That at the time the applications for such liquor licenses were before the said board of county commissioners to be acted upon, said moneys, checks or drafts were presented to the board of county commissioners either by the applicant for license or by said Blumberg; after the said board had acted upon such applications granting the license applied for, they instructed said Blumberg to turn said moneys, checks and drafts over to the county treasurer; that thereafter the said Blumberg wrongfully and unlawfully converted and appropriated to his own use and failed to account for said moneys, checks and drafts, and the whole thereof, except the sum of $500, which sum of $500 was paid to the state of Washington; that said Blumberg issued to the applicants therefor the liquor licenses directed by the board of county commissioners, knowing that the fees in payment thereof had not been paid to the county treasurer."

Section 6263, Rem. & Bal. Code, which confers on the board of county commissioners exclusive authority to license the sale of intoxicating liquors outside of any incorporated city, town, or village, contains the following proviso:

"Provided, that the annual license fee for the sale of spirituous, fermented, malt, or other intoxicating liquors shall, in no instance, be less than three hundred dollars or more than one thousand dollars, which said license fee shall be paid annually in advance to the county treasurer, who shall pay ten per cent of the amount into the general fund of the state treasury, thirty-five per cent into the county school fund, and the remaining fifty-five per cent into the general county fund."

It will be noticed that this section requires the fee to be paid in advance to the county treasurer, but that no procedure is fixed by the statute itself for carrying this mandate into effect. If the fees were actually paid to the treasurer before the application for a license was granted, a strict construction of the statute—not more strict than that contended for by the defendant bonding company—would require prompt payment of ten per cent to the state treasurer. Should the application thereafter be refused, complications might arise, and under our holding in *Hemrich Brothers*

*Brewing Co. v. Kitsap County,* 45 Wash. 454, 88 Pac. 838, the money could only be disbursed by the treasurer on proper orders made, and warrants issued. Common business prudence would demand that actual payment should not be made to the treasurer until the license was ordered to be issued by the commissioners. But by whom should it be then paid to the treasurer? Undoubtedly by the auditor, with whom the fee was deposited with the application when made. After the commissioners had actually passed upon and granted the application, it would then become the duty of the auditor, as *ex officio* clerk of the board of county commissioners, to issue the license, first seeing to it that the deposit made with him by the applicant was then paid in advance to the county treasurer. It is evident that the fees mentioned in the finding were paid to Blumberg by the several applicants, and that Blumberg converted the same to his own use.

The defendant bonding company contended, and the trial court held, that the applicants were required by the statute quoted to themselves pay the license fee directly to the county treasurer; that the auditor had no authority to receive it; that payment to him was in violation of the statute; that he simply became the agent of the applicants when he collected the fees; that he did not act as county auditor; that he was not guilty of embezzlement in converting the money to his own use; and that the defendant bonding company is not liable as surety for the loss of such fees. This contention cannot be upheld. The statute does not explicitly provide that the fee should be paid to the county treasurer *by the applicant,* so as to exclude the idea that it might first be deposited with the county auditor by whom it would afterwards be paid to the treasurer in advance, when the license was granted. If the contention of the bonding company is well founded, it would necessarily follow that no legal payments have yet been made by the applicants to whom the licenses were issued, and that the county would have causes of action against them. But were suits for the fees to be in-

stituted against them by the county, the applicants could undoubtedly avoid recovery, on the authority of *Seattle v. Stirrat,* 55 Wash. 560, 104 Pac. 834, recently decided by this court. The record shows that these license fees were paid by fifteen different applicants, and that a regular custom was followed in transacting the business. The county commissioners in each instance knew the money was in Blumberg's possession. They directed him to issue the licenses and to pay the fees to the treasurer. He issued the licenses, but unlawfully converted the fees to his own use. Subdivision 9, § 3917, Rem. & Bal. Code, directs that the county auditor shall, as clerk of the board of county commissioners, "perform all other duties required by law or any rule or order of the board." It was his duty under their orders to issue the licenses, and also to pay the fees to the county treasurer. It was not his duty to issue the licenses and embezzle the fees. The bonding company guaranteed the faithful performance of all acts of Blumberg in connection with his office and its duties. This guaranty means something. No embezzlement, misappropriation of funds, or other dishonest act, was any part of the duty of the county auditor. Faithful discharge of official duty contemplates not only the performance of those positive duties required by the statute, but also that the official will refrain from doing any fraudulent acts in connection with his office which he could not accomplish if he were not in official position.

Blumberg as county auditor was only charged with the duty of issuing liquor licenses, when all the prerequisite conditions had been performed. As auditor he was *ex officio* clerk of the board of county commissioners. It was his duty to keep proper records, minutes, and proceedings, and. to know the exact status of all matters pending before them. When he issued a liquor license, knowing that he had not obeyed their orders by paying the money to the county treasurer, he knowingly committed a fraudulent act in direct violation of his duties as auditor, and the bonding company

should now respond for the losses which the county sustained.

The correct rule to be applied to the facts before us is well stated in the first syllabus of *Hall v. Tierney*, 89 Minn. 407, 95 N. W. 219, in the following language:

"The object of an official bond is to obtain indemnity against the misuse of an official position for wrong purposes; and that which is done under color of office, and which would obtain no credit except for its appearing to be a regular official act, is within the protection of the bond, and must be made good by those who signed it."

In *State v. Leach*, 60 Me. 58, the defendant, as register of deeds for Cumberland county, falsely and fraudulently made, issued, and delivered an official certificate to the effect that he had examined the records of his office affecting title of one Leavitt to a certain lot, and that he found no incumbrances thereon. It was no part of his official duty to make such examinations, or give certificates of title, yet in a criminal prosecution predicated upon the acts mentioned, he was held guilty of misconduct in office. In *Board of Com'rs of Ramsey County v. Sullivan*, 89 Minn. 68, 93 N. W. 1056, sureties on the bond of a county auditor were held liable for the act of his deputy, in fraudulently issuing fictitious redemption and refunding orders for the purpose of obtaining money from the county treasurer. The court said:

"The duty of issuing valid redemption and refunding orders in proper cases was imposed by law upon the auditor. The deputy took advantage of the opportunity afforded by reason of his office, and issued fraudulent instead of valid orders. Such act was in the line of his duty and was what is termed in the books '*virtute officii*' or '*colore officii*,' and under the great weight of authorities the sureties are liable for such acts."

If Blumberg had not been auditor he could not have obtained possession of the liquor license fees, nor could he have issued the licenses. Without issuing the licenses he could not have misappropriated the money. The county sustained loss by reason of his malfeasance, dishonesty, and corrupt use of

the opportunities afforded by his position as auditor. The undertaking executed by the bonding company guaranteed faithful and diligent performance of the duties of his office according to law, and payment to the proper officer of all moneys that might come into his hands. He did neither, and the defendant is liable for the resulting financial loss sustained by the county. The trial court erred in holding that the plaintiff was not entitled to recover for the liquor license fees embezzled by Blumberg, but should have allowed plaintiff $5,700, which was the amount he received, after deducting his payment of $500 to the state.

Most of the questions raised by the defendant bonding company on its cross-appeal are disposed of in the opinion this day filed in *Skagit County v. American Bonding Co.*, *supra*, and also by the foregoing discussion, as they involved warrants fraudulently issued, warrants raised in amounts, and fees collected by Blumberg and not paid to the county.

The trial judge made, with others, the following finding:

"I further find that during his term of office the said Fred Blumberg received for the county clerk $41 for as many marriage license recording fees, which it was his duty to pay over to the county clerk as his fee for recording the marriage license returns. I find that the said fees were paid to the said Blumberg on the dates set out in paragraph 10 of plaintiffs' complaint, but that the evidence does not show when the money was misappropriated by the said Blumberg, but did show that the same had been received by him, and not accounted for, but was converted to his own use."

Upon this finding the plaintiff was awarded the sum of $41, included in the final judgment. The defendant company first contends that there was no law authorizing or permitting Blumberg to receive these recording fees, and that his misconduct with reference thereto was not a breach of the terms of his bond. As he received the money by reason of his position as auditor, and could not have received them otherwise, this contention cannot be sustained.

The company further contends that only a portion of these

fees was received during Blumberg's second term, and that it is not liable upon the bond involved in this action for that portion of the fees received during his first term. Blumberg's failure to account for fees received during his first term created a liability on the bond given for that term. As shown by paragraph 10 of the complaint, to which the finding refers, $19 only of these fees was received by Blumberg during his second term. Forty-one dollars was allowed. The defendant company is therefore entitled to a reduction of $22 on this account.

On the entire record we conclude that the judgment awarded by the trial court should be increased in the sum of $5,700 for liquor licenses collected, and decreased in the sum of $22 on account of fees for recording marriage certificates. The judgment will, therefore, be reversed, and the cause remanded with instructions to enter judgment in favor of plaintiff in accordance with this opinion. Neither party will recover its costs on this appeal.

RUDKIN, C. J., DUNBAR, PARKER, and MOUNT, JJ., concur.