LONGSTREET *v.* COUNTY OF MECOSTA.

1. HIGHWAYS AND STREETS—COUNTY ROAD COMMISSIONERS—NEGLI-GENCE — PLEADING — INDIVIDUALS NOT LIABLE UNLESS WILFUL NEGLIGENCE ALLEGED.

In an action against the individual members of the board of county road commissioners for the negligent killing of plaintiff's intestate, alleged to have been caused by defendant's failure to erect barriers and place red lights to warn the public that a bridge was out, as required by Act No. 165, Pub. Acts 1917, *held*, that, in the absence of any allegation of wilful negligence on defendants' part, no cause of action was set forth.[1]

2. SAME—MAINTENANCE OF HIGHWAYS A GOVERNMENTAL FUNCTION.

The construction and maintenance of highways is a governmental function, for the negligent discharge of which an action against the board of county road commissioners may not be maintained, in the absence of a statute waiving immunity.[2]

[1]Highways, 29 C. J. §§ 441, 474; [2]Id., 29 C. J. §§ 289, 302.
On personal liability of highway officers for negligence, see notes in 22 L. R. A. 824; 52 L. R. A. (N. S.) 142, L. R. A. 1916B, 1186.

3. PARTIES—COURTS WILL DETERMINE REAL PARTIES IN INTEREST.
The courts will look through and beyond the nominal parties to determine the real parties in interest.[3]

4. STATES — ACTION AGAINST STATE OFFICER IS AGAINST STATE WHICH MUST CONSENT.
Where a State officer is sued in relation to official acts, it is a suit against the State, which may not be maintained without its consent.[4]

5. EVIDENCE—LENGTH OF HIGHWAYS—JUDICIAL NOTICE.
The Supreme Court will take judicial notice of the fact that the public highways of the State measure thousands of miles.[5]

6. HIGHWAYS AND STREETS—STATUTES—LIABILITY OF STATE HIGHWAY COMMISSIONER.
The highway laws of the State examined, and *held*, that while they show intent of the legislature to place upon the State highway commissioner duties of supervision, administration, and discretionary control over the highways of the State, and the granting of power to effectuate that purpose, there is no waiver therein of the immunity of the State, and, therefore, the State highway commissioner is not liable as such or individually for the negligent discharge of said duties.[6]

7. SAME—CONSTRUCTION OF HIGHWAYS   GOVERNMENTAL FUNCTION —LIABILITY STATUTORY.
The construction and maintenance of public highways is the discharge of a governmental function, for the improper discharge of which no liability exists except as created by statute.[7]

8. SAME—STATUTES—LIABILITY OF COUNTIES FOR DEFECTIVE HIGHWAYS NOT REPEALED—REPEAL BY IMPLICATION.
The statutory provisions (1 Comp. Laws 1915, §§ 4367, 4584) creating liability of counties for failure to properly maintain highways were not expressly repealed by Act No. 19, Pub. Acts 1919, or by any other provision of the highway law; nor does the placing thereby of numerous duties of supervision and administration upon the State highway commissioner repeal or supersede said sections.[8]

9. STATUTES—REPEAL BY IMPLICATION.
Repeals by implication are not favored.[9]

---

[3]States, 36 Cyc. p. 916; [4]Id., 36 Cyc. p. 916; [5]Evidence, 23 C. J. § 1984 (1926 Anno); [6]Highways, 29 C. J. § 439; [7]Id., 29 C. J. § 439; [8]Id., 29 C. J. § 440; [9]Statutes, 36 Cyc. p. 1071.

10. HIGHWAYS AND STREETS—TRUNK LINE HIGHWAY A COUNTY ROAD—LIABILITY OF COUNTY.

Under section 18, chap. 4, Act No. 367, Pub. Acts 1921, the county road commissioners are required to take over a State rewarded trunk line highway comprising part of the county road system as a county road, and therefore the county is liable for failure to erect barriers and place red lights on such highway warning the public that a bridge was out as required by Act No. 165, Pub. Acts 1917.[10]

Error to Mecosta; Barton (Joseph), J.    Submitted June 6, 1924.    (Docket Nos. 50-52.)    Decided October 6, 1924.

Separate actions of case by Arley Longstreet, individually and as administratrix of the estates of John and Walter Wayne Longstreet, deceased, against the county of Mecosta and others for injuries and death caused by a defective highway.    From an order granting a motion to dismiss, plaintiff brings error.    Affirmed as to all defendants except the county of Mecosta and reversed as to it and remanded for trial.

*C. W. & W. S. Foster* (*William S. Cameron*, of counsel), for plaintiff.

*Alpheus A. Worcester*, for defendant county of Mecosta.

*Arthur J. Butler*, for defendant board of county road commissioners.

*John E. Dumon*, for defendants Young *et al.*

*Andrew B. Dougherty*, Attorney General, and *H. Victor Spike*, Assistant Attorney General, for defendant Rogers.

FELLOWS, J.    These three cases involve one accident, therefore one state of facts, and are controlled

_____
[10]Highways, 29 C. J. § 452.

by the same legal principles.   They were submitted together and will be disposed of in one opinion.   A State rewarded trunk line highway known as the "Mackinaw Trail" runs through the county of Mecosta. Between Big Rapids and Paris Dalziel creek crosses this highway.   In 1923 the bridge across this stream washed out and on June 1st a new bridge was being constructed.   On the night of that day John Longstreet accompanied by his wife, Arley, and his son Walter Wayne were driving on this highway.   It is alleged that there were no barriers to warn the public and particularly no red light as required by Act No. 165, Pub. Acts 1917 (Comp. Laws Supp. 1922, § 4747 [19-21]).   Shortly after midnight the party reached Dalziel creek and although exercising due care the automobile in which they were riding was precipitated into the creek, Mr. Longstreet being instantly killed, Mrs. Longstreet being seriously injured, and the son so seriously injured that he died in a few days.   The actions are brought against the State highway commissioner, the county of Mecosta, the board of county road commissioners of that county, and the individual members of the board.   The declarations count in the first count on a joint liability, and in other counts on liability of the defendants separately and there is no question raised that the cause of action, if one exists, is not properly pleaded. Defendants moved to dismiss on the ground that none of them are liable under the law.   The trial judge dismissed all the suits.

1. We shall first consider whether the individual members of the board of county road commissioners and the board are liable.   There is no allegation of wilful negligence on the part of the members of the board, nor is the action for trespass by them upon property of an individual, nor for acts committed in excess of their authority.   They are public officials

228—Mich.—35.

owing a duty to the public generally as contradistinguished from a duty to the individual members of the public.    In 2 Cooley on Torts (3d Ed.), 756,. the rule is thus announced:

"The rule of official responsibility, then, appears to be this: That if the duty which the official authority imposes upon an officer is a duty to the public, a failure to perform it, or an inadequate or erroneous performance, must be a public, not an individual injury, and must be redressed, if at all, in some form of public prosecution.    On the other hand, if the duty is a duty to the individual, then a neglect to perform it, or to perform it properly, is an individual wrong, and may support an individual action for damages."

In *McConnell* v. *Dewey*, 5 Neb. 385, it was held (quoting from the syllabus):

"The duties of a supervisor of public roads are of a general public nature, and he acts for the public at large, and therefore an action, at the common law, will not lie against him by an individual for an injury occasioned to his person or property, by reason of a defect in a public road or bridge."

In *Robertson* v. *Monroe*, 79 N. H. 336 (109 Atl. 495), it was said by Chief Justice Parsons, speaking for the court:

"It is, however, generally, though not universally, held that at common law the officers upon whom is imposed the performance of the duty of highway maintenance are not answerable to individuals for default in such performance.    *    *    *    As the same duty when imposed upon public officers remains governmental in its nature owed to the public and not to individuals, it would seem to plainly follow that the officers upon whom the duty of maintenance was imposed would not be liable to an individual for default in the performance of their public duty."

The supreme court of Idaho in the case of *Youmans* v. *Thornton*, 31 Idaho, 10 (168 Pac. 1141), following the earlier holding in *Worden* v. *Witt*, 4 Idaho, 404 (39

Pac. 1114, 95 Am. St. Rep. 70), held (we quote the syllabus) :

"1. The duties of county commissioners and road overseers are prescribed by statute, and are governmental functions.

"2. These officers are responsible to the State and county for the performance of their official duties, but beyond this their liability cannot be extended.

"3. County commissioners and road overseers are not individually liable in damages for injuries sustained by reason of defective highways or bridges."

In *Templeton* v. *Beard,* 159 N. C. 63 (74 S. E. 735), it was held that an action could not be maintained against the individual members of the county commissioners for negligence in the construction of a bridge unless they acted or failed to act "corruptly or of malice," and *White* v. *Commissioners,* 90 N. C. 437 (47 Am. Rep. 534), was relied upon.    See, also, *Nagle* v. *Wakey,* 161 Ill. 387 (43 N. E. 1079) ; *Hardwick* v. *Franklin,* 120 Ky. 78 (85 S. W. 709) ; *Lynn* v. *Adams,* 2 Ind. 143; *Moss* v. *Cummings,* 44 Mich. 359; 29 C. J. p. 675; *contra, Mott* v. *Hull,* 51 Okla. 602 (152 Pac. 92, L. R. A. 1916B, 1184).

It must be held that the declarations set forth no cause of action against the individual defendants and that the cases were properly dismissed as to them. We shall presently show that the construction and maintenance of highways is the discharge of a governmental function and that in the absence of statute an action may not be maintained for the negligent discharge of that function.    The board of county road commissioners were in the discharge of such governmental function and we are not persuaded that any statute of this State has waived the immunity from liability which surrounds and protects it.    As far back as 1857 it was held by this court in *Commissioners of Highways* v. *Martin,* 4 Mich. 557 (69 Am. Dec. 333), we quote the syllabus:

"Towns are not liable, either at common law or by statute, to actions for damages sustained by individuals, in consequence of the non-repair of bridges and highways.    Nor can they, under chapter 119 of the Revised Statutes, be subjected to any liability for such non-repair, through the means of an action against the commissioners of highways."

The cases were properly dismissed as to the board of county road commissioners.

2. We shall next consider the liability of defendant Frank F. Rogers.   So far as his personal liability is concerned, what has been said as to defendants Young, Manahan and Laflin is applicable and there is no personal liability on his part.   The fourth count in all the declarations alleges that he is State highway commissioner and it is in such capacity he is sued. That the courts will look through and beyond the nominal parties to determine the real parties in interest, that where a State officer is sued in relation to official acts it is a suit against the State, and that the State may not be sued without its consent are all propositions settled by *McDowell* v. *Warden of Reformatory*, 169 Mich. 332, and we could well forego consideration of the character of the duties of the State highway commissioner if his liability was the only question in the case.    Decision so far as liability of this State officer could be well rested on the *McDowell Case*.     But it is insisted by the other defendants that his duties, and particularly those prescribed by Act No. 19, Pub. Acts 1919, as amended (Comp. Laws Supp. 1922, § 4859 [1-10]), go beyond supervision, administration and discretionary control.

That the public highways of the State measure thousands of miles is a fact of which this court will take judicial notice.   That in legislative judgment, supervision and administration of their improvement should be largely vested in the State as the most efficient method to accomplish results, is fairly apparent

from the legislation dealing with the subject.   A State highway department was created (1 Comp. Laws 1915, § 4378 *et seq.*), and numerous duties were placed on the State highway commissioner and various powers conferred at substantially every session of the legislature.   We shall consider in detail the act of 1919, but can not within the compass of this opinion detail all the powers and duties of the State highway commissioner.   Some will be noted.   He is authorized to collect information from overseers of highways and city superintendents or commissioners of streets (§ 4381) ; he is to furnish outline plans and specifications for the improvement of public wagon roads (§ 4383) ; he passes on the plans for State reward highways, gives information and advice as to construction, inspects them when the work is completed, and draws the warrant for the award (§ 4386, as amended by Act No. 184, Pub. Acts 1923) ; and there must be filed for his approval a map of the county showing the system of county roads (section 18, chap. 4, Act No. 367, Pub. Acts 1921 [Comp. Laws Supp. 1922, § 4364]) ; he approves the system for patrol and maintenance of the roads and may withhold rewards (section 12, chap. 5, Act No. 116, Pub. Acts 1919 [Comp. Laws Supp. 1922, § 4389]) ; he is required to perform numerous duties under the Covert act, so-called (Act No. 59, Pub. Acts 1915 [1 Comp. Laws 1915, § 4671 *et seq.*]), which, however, may be performed by a subordinate (section 38, Act No. 125, Pub. Acts 1917 [Comp. Laws Supp. 1922, § 4708]) ; in section 2*b*, chapter 5, Act No. 367, Pub. Acts 1921 (Comp. Laws Supp. 1922, § 4379 [2]), it is provided:

"The State highway commissioner is hereby invested with full charge and control over roads heretofore or hereafter built or maintained by the State." * * *

The State trunk line highway system was inaugu-

rated by Act No. 334, Pub. Acts 1913 (1 Comp. Laws 1915, § 48-51 *et seq.*).    Act No. 19, Pub. Acts 1919 (Comp. Laws Supp. 1922, § 4859), is entitled:

"An act to provide for the construction, improvement and maintenance of trunk line highways."

In the first section (see Act No. 2, Pub. Acts 1919, Extra Session, and Act No. 257, Pub. Acts 1921 [Comp. Laws Supp. 1922, § 4859 (1)]) it is provided:

"All trunk line highways, established under the provisions of act number three hundred thirty-four of the Public Acts of nineteen hundred thirteen, as amended, shall hereafter be constructed, maintained and improved, in accordance with the provisions hereof under the direction, supervision and control of the State highway commissioner."    *    *    *

The division of the cost of constructing, improving and maintaining State trunk line highways is provided for in sections 2 and 3; section 4 provides that counties, townships and good roads districts may raise money by taxation or bond issue.    It further provides for contracts between the State highway commissioner and the local authorities for the construction, improvement and maintenance of such highways.    Under this provision the State highway commissioner had, in the instant case, entered into a contract with the board of county road commissioners of the county.    By section 5 provision is made for notice and proceedings by the State highway commissioner for default in the performance of the contract and a discretion is vested in the commissioner to proceed at once with the work or await the raising of the funds; in section 6 provision for withholding reward money also appears; section 7 provides for the compulsory spreading of the tax and the instituting of mandamus proceedings by the attorney general to secure such result (see *Attorney General* v. *Bruce*, 213 Mich. 532); section 8 contains the following provisions:

"The boards of county road commissioners, the boards of commissioners of good roads districts and township boards are hereby authorized and required to provide for a system of proper patrol maintenance of trunk line highways subject to their jurisdiction, which system shall be subject to the approval of the State highway commissioner.   *   *   *   It shall be the duty of the State highway commissioner to see that all trunk line highways are properly maintained in suitable condition for public travel."

Section 9, as amended (see Act No. 257, Pub. Acts 1921), authorizes the local authorities to contract for the work at a price below the lowest possible bidder and authorizes the commissioner to reject all bids and have the work done by day labor.   Section 10 makes it the duty of the commissioner to cause the placing of proper signs and guide posts and prohibits their removal or injury under penalty; their costs is made a part of the cost of construction.

An examination of the highway laws, including the act of 1919, shows a legislative intent to place upon the State highway commissioner duties of supervision, administration and discretionary control over the highways of the State, and the granting of power to effectuate that purpose.   But nowhere are we able to discern a legislative intent to waive the immunity of the sovereign, the State, from suit for any failure to perform such duties.   Under no view of the case can liability of defendant Rogers either individually or as State highway commissioner be sustained.

3. This brings us to the last question in the case, *i. e.*, whether liability exists against the county.   That the construction and maintenance of public highways is the discharge of a governmental function, for the improper discharge of which no liability exists except as created by statute, is the settled law of this State (*Gunther* v. *County Road Commissioners*, 225 Mich. 619), where the authorities are reviewed at length.

Act No. 283, Pub. Acts 1909 (1 Comp. Laws 1915, § 4287 *et seq.*), is a revision and consolidation of the highway laws; chapter 4 deals with county road law; section 21 of this chapter (1 Comp. Laws 1915, § 4367) contains the following language:

"It is hereby made the duty of the counties to keep in reasonable repair, so that they shall be reasonably safe and convenient for public travel, all county roads, bridges and culverts that are within their jurisdiction and under their care and control which are open to public travel.    The provisions of law respecting the liability of townships, cities, villages and corporations for damages for injuries resulting from a failure in the performance of the same duty respecting roads under their control, shall apply to counties adopting such county road system."

which language was continued in the amendment by Act No. 388, Pub. Acts 1919 (Comp. Laws Supp. 1922, § 4367).    The liability referred to is statutory (1 Comp. Laws 1915, § 4584) and reads as follows:

"Any person or persons sustaining bodily injury upon any of the public highways or streets in this State, by reason of neglect to keep such public highways or streets, and all bridges, sidewalks, crosswalks and culverts on the same in reasonable repair, and in condition reasonably safe and fit for travel by the township, village, city or corporation whose corporate authority extends over such public highway, street, bridge, sidewalk, crosswalk or culvert, and whose duty it is to keep the same in reasonable repair, such township, village, city or corporation shall be liable to and shall pay to the person or persons so injured or disabled just damages, to be recovered in an action of trespass on the case before any court of competent jurisdiction."

It will thus be noted that a statutory liability of counties having the county road system for their neglect of duty in keeping "all county roads, bridges," etc., within their jurisdiction reasonably safe for public travel was created.    This statutory provision

creating liability of the county has not been expressly repealed.    Nor has it been repealed by implication by Act No. 19, Pub. Acts 1919, or any other provision of the highway law to which our attention has been called or which we are able to find.    It is true, as we have pointed out, that numerous duties have been placed upon the State highway commissioner, duties of supervision and administration.    The placing of these supervisory and administrative duties on a State officer does not by implication repeal or supersede the provisions of the act of 1909, which provisions were re-enacted by the same legislature which made provision for the construction and maintenance of trunk line highways.    Repeals by implication are not favored in the law.    This leaves only the question of whether this trunk line highway is a county road, and that question must be answered in the affirmative upon the authority of *Baird* v. *Board of Sup'rs of Saginaw Co.,* 226 Mich. 80, handed down since the instant case was decided in the court below.    We there quoted from Act No. 367, Pub. Acts 1921 (§ 18, chap. 4), the following "imperative" language:

"All State rewarded roads composing a part of this system shall be taken over as county roads by the board of county road commissioners."

And said:

"Having been adopted and approved as a part of the county road system, it is a county road and, therefore, a proper object of the appropriation of county funds."

We do not overlook the fact that the supreme courts of Connecticut and Rhode Island have sustained liability on the part of the State and denied liability of the municipalities (*Murphy* v. *Town of Norfolk,* 94 Conn. 592 [110 Atl. 62]; *Pooler* v. *Burton,* 40 R. I. 249 [100 Atl. 465]).    But the Connecticut court but applied the statutory provision (section 1515, General

Statutes of Connecticut, 1918) which expressly made the State liable and expressly provided for suit against the State highway commissioner. The Rhode Island court in construing the highway act (chapter 84, General Laws of Rhode Island, 1909) which differs materially from ours held that liability was provided for against the State except for the removal of snow and ice. The State of Vermont, however, has a statute similar in effect to section 4584 above quoted (section 4029, Public Statutes Vermont, 1906) and in *Maynard* v. *Township of Westfield,* 87 Vt. 532 (90 Atl. 504), it was said by the supreme court of that State:

"The fact that this highway was a State road and together with the culvert built under State supervision, and left without a railing by State officers, was immaterial. It is true that the statute gives the State the controlling voice in the construction of these roads, but the effect of the statute is not to take them out of the hands of the towns any further than is necessary for that purpose. The statute does not relieve the town of its statutory liability for injuries thereon, but merely provides that the expenditures of State money shall be under State control. There is nothing in the statute to have prevented the defendant from erecting a railing at this culvert, or removing any other dangerous condition left by the State authorities. If it had been the intent of the legislature that the town's civil liability should be affected by the provisions for State aid, it is fair to assume that it would have made some change in P. S. 4029."

In the recent case of *Fidler* v. *Township of Lafayette,* 226 Mich. 635, where it was urged that the township was not liable for an accident which occurred on a State rewarded road, it was said:

"It was no defense to show the State paid a part of the expense of improving the highway."

It follows from what has been said that the judgment must be affirmed as to defendants Rogers, board of county road commissioners of Mecosta county,

Young, Manahan and Laflin, and they will recover their costs of this court.   The judgment will be reversed as to defendant county of Mecosta and it will have the usual time to plead.   Plaintiffs will recover their costs in this court against defendant county.

CLARK, C. J., and MCDONALD, BIRD, SHARPE, MOORE, STEERE, and WIEST, JJ., concurred.